HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AIOI NISSAY DOWA INSURANCE CO.,

    Plaintiff,

    v.

UNITED MOTOR FREIGHT, INC.,

    Defendant.

CASE NO. C13-779RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for partial summary judgment from Defendant United Motor Freight, Inc. ("UMF"). No party requested oral argument and the court finds oral argument unnecessary. For the reasons stated below, the court DENIES the motion. Dkt. # 22.

## II. BACKGROUND & ANALYSIS

A shipper in Japan dispatched a large "sandwich injection" machine; the machine's ultimate destination was a consignee in Kentucky. No one disputes that the longest part of the machine's journey was aboard a ship owned by Westwood Shipping Lines. No one disputes that once the ship arrived at port in Seattle, a company called MOL Logistics played some role in arranging the machine's transfer to a truck operating on behalf of Defendant UMF. The truck rolled over in Idaho on its way to Kentucky, and the machine suffered serious damage. Plaintiff Aioi Nissay Dowa Insurance Co.

ORDER – 1

("ANDI") was the shipper's insurer. It compensated the shipper for the loss and subrogated to the shipper's rights against UMF. This suit followed.

Although UMF properly calls the motion before the court a request for "partial" summary judgment, the ruling it asks for would all but eliminate its liability. Whereas ANDI asserts a claim worth more than $900,000, UMF contends that its liability is limited by contract to no more than $500.

The contract to which UMF points is a bill of lading and a set of standard terms on its reverse side. The bill of lading lists the Japanese entity as the shipper, the Kentuckian entity as the consignee, Nagoya, Japan as the port of loading, and Seattle as the port of discharge. It lists no place of delivery, although the bill of lading has an empty box labeled "PLACE OF DELIVERY" and an explanation that the box (among others) applies only to "intermodal" bills of lading. The bill of lading explains that "[d]elivery will be made to the named consignee, or his authorized agent, . . . at the port of discharge or delivery, whichever is applicable."

Although the parties disagree about what to make of the bill of lading itself, they do not dispute (at least in this motion) the stakes of their disagreement. If, as UMF claims, the bill of lading is a "through bill of lading," then the contractual terms on the back of the bill of lading apply to UMF's transport of the machine, and those terms limit UMF's liability to $500. On the other hand, if ANDI is correct, and the bill of lading merely covers transport of the machine from Japan to Seattle, then the contractual limit of liability is inapplicable to UMF.

In determining whether the bill of lading is a through bill of lading, the court applies the familiar summary judgment standard, which requires the court to draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving

ORDER – 2

party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

A bill of lading "records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Railway Co. v. Kirby*, 543 U.S. 14, 18-19 (2004). A "through" bill of lading permits cargo owners to "contract for transportation across oceans and to inland destinations in a single transaction." *Id.* at 26-27. The court thus considers whether the evidence before it establishes that a reasonable jury could only reach one conclusion as to whether the shipper entered a single transaction covering transport of the machine from Japan to Kentucky.

The face of the bill of lading at issue largely suggests that it covers only transport from Japan to Seattle. It contains none of the hallmarks of an "intermodal" bill of lading, and notably indicates that the port of discharge is in Seattle but indicates no separate place of delivery. It designates the Kentucky consignee and gives its address in Kentucky, but does not otherwise suggest that it covers transport to Kentucky. The court notes that the bill of lading imposes various cryptic "Freight & Charges" totaling about $21,600, but neither party has explained whether those charges are associated solely with ocean transport or with overland transport as well. The terms on the reverse side of the bill of lading – boilerplate clauses that do not refer to the specific shipment at issue – are of no assistance in assessing whether they are affixed to a "through" bill of lading.

The additional documentary evidence of the overland portion of the shipment is conflicting. MOL Logistics issued a straight bill of lading for transport from Seattle's

ORDER – 3

1  port to Kentucky, designating UMF as the carrier. Calvert Decl. (Dkt. # 24), Ex. B. But
2  that bill of lading refers to the bill of lading in question as the "Master BL," supporting a
3  finding that the oversea and overland portions of the journey were part of the same
4  contract. Mitigating against that finding is that the shipper in Japan invoiced the
5  Kentucky consignee separately for the oversea portion of the shipment. Hamilton Decl.
6  (Dkt. # 29), Ex. A. That suggests that the oversea portion of the shipment was a separate
7  transaction. There is no evidence of an invoice for the overland portion of the shipment.
8  Instead, there is "Pickup/Delivery Receipt" suggesting that UMF contracted with MOL
9  Logistics for the overland transport of the machine. Gilbert Decl. (Dkt. # 26), Ex. A. But
10 that "Receipt" is not itself a contract, and it does not determine conclusively whether the
11 overland shipment was a separate transaction.

12  Other evidence before the court, like the documentary evidence, is not dispositive.
13 UMF's general manager declares that because "UMF was only the delivering carrier in
14 the shipment . . . , UMF did not prepare and issue a separate bill of lading for this
15 shipment for purposes of the inland transport" from Seattle to Kentucky. Roadhouse
16 Decl. (Dkt. # 25) ¶ 5. But the general manager's declaration as to his understanding of
17 UMF's legal responsibility is not dispositive of what UMF was actually required to do. It
18 is possible that UMF was required to issue a separate bill of lading but did not. Notably,
19 the general manager offers no information about who UMF contracted with for the
20 shipment. Was it the shipper (or its agent) or the Kentucky consignee (or its agent)?
21 UMF's transportation coordinator declares that in advance of the shipment, she
22 communicated with MOL Logistics and Westwood regarding the shipment. Gilbert Decl.
23 (Dkt. # 26) ¶ 4. What she does not declare is whether MOL Logistics was working on
24 behalf of the shipper, Westwood, or the consignee.[1] It is possible, based on this
25 evidence, that MOL Logistics merely worked as the facilitator of the ship-to-shore leg of

---

[1] UMF's motion includes the assertion that the shipper "arranged transportation of the [machine] through MOL Logistics," Dkt. # 22 at 1-2, but it offers no evidence for that assertion.

28 ORDER – 4

a single transaction between the shipper and the carrier, acting at the direction of either the shipper or the carrier. It is also possible that MOL Logistics, acting at the direction of the Kentucky consignee, was the shipper in a second standalone contract for overland transport.

ANDI's extrinsic evidence is also not dispositive. It attempts to rely on a declaration from an official at MOL Logistics, but that declaration establishes (at most) that MOL Logistics sometimes worked as a customs broker for the Kentucky consignee. Fonda Decl. (Dkt. # 28) (attaching declaration of Scott Larson). It is silent as to the shipment at issue in this motion, and thus does not establish whether MOL Logistics was working for the shipper, Westwood, or the consignee. A customs specialist at the Kentucky consignee declares that MOL Logistics "arranges inland transportation" for the consignee, and did so in this case. Hamilton Decl. (Dkt. # 29) ¶ 4. But what the customs specialist does not explain is whether MOL Logistics arranged transportation in this case as part of a single transaction covering both the oversea and overland journey, or whether it did so in a separate transaction.

The court cannot determine, on the standards that apply in a summary judgment motion, whether the bill of lading before it is or is not a through bill of lading. It is possible that the bill of lading was incomplete, but that the transaction it evidences was a single contract for shipment from Japan to Kentucky. It is possible that the bill of lading was complete and that it covered only shipment from Japan to Seattle. It is possible that the consignee separately contracted for shipment of the machine from Seattle to Japan, just as it is possible that the shipper contracted for shipment from Japan to Kentucky after working with the consignee to choose an overland shipper. The court could resolve this dispute by applying the preponderance of evidence standard, but it cannot apply that standard on a motion for summary judgment. For now, the court can only say that disputes of fact prevent the court from characterizing the bill of lading as "through" or otherwise as a matter of law.

ORDER – 5

### III.  CONCLUSION

For the reasons stated below, the court DENIES UMF's motion for partial summary judgment. Dkt. # 22.

DATED this 29th day of April, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 6